# 19-1377

---

# United States Court of Appeals
# for the Seventh Circuit

---

SHIRLENA BARNES,

*Plaintiff-Appellant*

v.

CITY OF CENTRALIA and MICHAEL PEEBLES, in his individual capacity,

*Defendants*

---

On Appeal from the United States District Court
for the Southern District of Illinois
Case No. 17-cv-01366-NJR
Honorable Nancy J. Rosenstengel
Magistrate Judge Reona J. Daley

---

## APPELLANT'S BRIEF AND SHORT APPENDIX

---

Frank R. Ledbetter
*Counsel of Record*
Ledbetter Law Firm, LLC
141 N. Meramec Avenue, Suite 24
Saint Louis, MO 63105
(314) 535-7780
stlatty@gmail.com

*Attorney for Appellant*

## DISCLOSURE STATEMENT

1.  The full name of every party that the undersigned attorney represents in the

case:  Appellant Shirlena Barnes.

2.  The name of all law firms whose partners or associates have appeared on behalf of the party

in the case (including proceedings in the district court of before an administrative agency) or are

expected to appear for the party in this Court:  Ledbetter Law Firm, LLC and Bruce Bramoweth

Law Office.

3.  If the party or amicus is not a corporation:  not applicable.

/s/ Frank R. Ledbetter

Frank R. Ledbetter
Admitted *Pro Hac Vice*
141 N. Meramec Avenue, Suite 24
Saint Louis, MO 63105
(314) 535-7780 Telephone
(314) 533-7078 Facsimile
stlatty@gmail.com

*Appellant's Counsel of Record*

# TABLE OF CONTENTS

PAGE

DISCLOSURE STATEMENT…………………………………………………………2

TABLE OF AUTHORITIES…………………………………………………………...4

JURISDICTIONAL STATEMENT…………………………………………………5

STATEMENT OF THE ISSUE………………………………………………………...5

STATEMENT OF THE CASE………………………………………………………5

    A.   Proceedings Below…………………………………………………5

    B.   Facts of the Case……………………………………………………7

SUMMARY OF ARGUMENT………………………………………………………...9

ARGUMENT………………………………………………………………………10

CONCLUSION………………………………………………………………..16

CERTIFICATE OF COMPLIANCE…………………………………………………17

CERTIFICATE OF SERVICE…………………………………………………… 18

# TABLE OF AUTHORITIES

CASES                                                                                     PAGE

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................. 15

*Andre v. Pomeroy*, 35 N.Y.2d, 361 (1974)………………………………………15

*Beck v. Ohio*, 379 U. S. 89 (1964)………………………………………………13

*Bennington v. Caterpillar, Inc.*, 275 F.3d 654 (7th Cir. 2001)......................14

*Brinegar v. U. S.*, 338 U.S. 160 (1949)…………………………………………12

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)……………………………13

*Cohen v. California*, 403 U.S. (1971)……………………………………………13

*Illinois v. Gates*, 462 U.S. 213 (1983)…………………………………………12

*Monell v. Department of Social Services*, 436 U.S. 658 (1978)……………………13

*Prospect Hospital*, 68 N.Y. 2d 320 (1986)………………………………………15

*Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014)……………14

*Wellington v. Daniels*, 717 F.2d 932 (CCA 4 1983)………………………………14

STATUTES

28 U.S.C. § 1291……………………………………………………………………5.

28 U.S.C. § 1331……………………………………………………………………5

28 U.S.C. § 1343……………………………………………………………………5

28 U.S.C. § 1367(a)…………………………………………………………………5

42 U.S.C. § 1983……………………………………………………………passim

720 ILCS 5/12-6……………………………………………………………………6

720 ILCS 5/12-6.2……………………………………………………………………6

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the United States Constitution, pursuant to 28 U.S.C. § 1343, because relief is sought under 42 U.S.C. § 1983, and 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claim that it claims part of the same case for Article III purposes.   On February 28, 2019, Plaintiff-Appellant Shirlena Barnes filed a timely notice of appeal of the District Court's January 31, 2019 Final Order terminating this matter entered after a decision rendered in favor of Defendants' Motion for Summary Judgment.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Whether the trial court erred in holding that no reasonable jury could conclude that probable cause did not exist in the arrest of Appellant.

2.  Whether the trial court erred in holding that no reasonable jury could conclude that Defendants did act under color of state law in the arrest of Appellant.

3.  Whether the trial court abused its discretion in granting summary judgment to Appellees.

## STATEMENT OF THE CASE

### A. Proceedings Below.

On December 18, 2017, Shirlena Barnes brought a four-count suit in the Southern District of Illinois against the City of Centralia and one of its officers, Michael Peebles, in his individual capacity, seeking compensatory and punitive

damages against Defendants. The suit was filed in response to Appellant's September 17, 2016 arrest by the Centralia Police Department for the felony crimes of Intimidation (720 ILCS 5 / 12-6) and Aggravated Intimidation (720 ILCS 5 / 12-6.2). Count I of the complaint is a § 1983 Violation of Fourth Amendment: Unlawful Seizure claim against Defendant Peebles in his individual capacity. Count II is a § 1983 Violation of Fourth Amendment: Malicious Prosecution claim against Defendant Peebles in his Individual Capacity. Count III is a § 1983 Violation of the Fourth Amendment: *Monell* Liability claim against Defendant Centralia. Count IV is a state law malicious prosecution claim against Defendant Peebles.

Appellant conducted depositions of Centralia police officers Michael Peebles, Jamie James, Andrew Harvard, Ryan Bundy, Todd Hempen and of retired Police Chief Douglas Krutsinger, who was acting police chief on the arrest date and for several days thereafter. Defendants deposed Appellant and Appellant's physician Gautam Jha.

On November 20, 2018 the Defendants filed a Motion for Summary Judgment and supporting Memorandum. The Southern District Court on January 29, 2019 entered a Judgment in a Civil Action in favor Defendants, granting summary judgment for the Defendants and dismissing the action.

## B.    Facts of the Case

Appellant Shirlena Barnes is a life-long resident of Centralia, Illinois (S. A. 3, p. 14). At the time of Appellant's arrest, she had a 10-year-old son and a 16-year-old daughter, who lived with her. (S. A. 3, p. 15). Shirlena Barnes had worked for the

State of Illinois' Department of Human Services at Murray Developmental Center in Centralia, Illinois since prior to 1995. (S. A. 3, p. 19).   Shirlena Barnes had no knowledge of any family members being involved in gang activity at the time of her arrest (S. A. 3, p. 35).  Appellant did not personally know Albert Gardner (S. A. 3, p. 35) or Joevionte Sims (S. A. 3, p. 36), the parties Defendant Peebles arrested at 911 East Kell Street in Centralia on the same date of Appellant's arrest. (S. A. 5, p. 37) Appellant was parked in her vehicle near the arrest scene of Gardner and Sims and spoke with a niece named Whitney, who was in another vehicle, at the time Defendant Peebles and another officer arrested Gardner and Sims.  (S. A. 3, p. 44). Appellant said nothing to Defendant Peebles at the time he arrested Gardner and Sims.  (S. A. p. 3).  Appellant had no criminal record at the time of her arrest other than one traffic ticket (S. A. 3, p. 22)

Defendant Peebles came to know Appellant circa 2005-2006 from "working the neighborhood." (S. A. 5, p. 18). Defendant Peebles testified that he recalled going to Appellant's house to take a complaint made by Appellant against another party. (S. A. 5, p. 25).  Defendant Peebles on the date of Appellant's arrest at slightly after 6:00 pm arrested Albert Gardner and Joevionte Sims at 911 East Kell Street in Centralia. (S. A. 5, p. 37).  Connie Ballentini, a Centralia police department secretary, sent Defendant Peebles a text message that included attachments of Appellant's Facebook posts made on that date, which referenced Defendant Peebles  (S. A. 5, pp. 39-40, 41). Defendant Peebles read the text messages and attachments while driving home.  (S. A. 5, p. 41).  Within the Facebook posts, Appellant made reference to Defendant

Peebles as a "thirsty bitch." (S. A. 5, p. 75)   Defendant Peebles testified that he thought that thirsty meant he arrested people for "no reason."  (S. A. 5, p. 62).  Also, within the Facebook posts Appellant stated that "Mike" didn't believe that "what goes around comes around" and "when you got kids of your own."   (S. A. 5, p. 75). Defendant Peebles after reading the text and attachments called assistant Marion County state's attorney Melissa Doran on her cell phone and related the content of the Facebook posts. (S. A. 5, p. 69)

Defendant Peebles testified that Doran stated she could not tell Peebles to arrest Appellant but that he could file a police report.  (S. A. 5, pp. 71-72).  Defendant Peebles made a written statement, which he gave to Centralia officer Andrew Harvard (S. A. 5, p. 81).  Defendant Peebles called the Centralia Police Department and spoke with fellow officer Sgt. Jamie James. (S. A. 5, p. 72).   Defendant Peebles advised Sgt. James that Appellant had threatened harm to Peebles' children. (S. A. 5, p. 72-73)  Per Sgt. James' testimony, Defendant Peebles stated that Melissa Doran had told Defendant Peebles that Doran wanted Barnes arrested (S. A. 6, p. 88) contrary to Defendant Peebles' testimony that Melissa Doran had told Defendant Peebles moments earlier that she could not tell the Defendant Peebles whether Appellant should be arrested (S. A. 5, p. 71).

Sgt. James and Melissa Doran exchanged text messages in which Doran told Sgt. James that whether probable cause existed was "debatable." (S. A. 2, p. 3).  The word "debatable" is synonymous with the words "questionable" and "doubtful," and clearly indicates that something is not clear-cut.  Doran communicated to Sgt. James

that she was not clear that the Facebook posts contained a specific threat, a necessary element of the felony Intimidation. (S. A. 2, p. 3) Ms. Doran stated that she was unable to advise the Centralia police department to arrest Appellant. (S. A. 2, p. 3).

Sgt. James arrested Shirlena Barnes at her residence. (S. A. 4, p. 2). Appellant was consequently prosecuted by the Marion County State's Attorney for the felonies Intimidation and Aggravated Intimidation (S. A. 1, p. 3). The State's Attorney dismissed the two charges on December 20, 2016 (S. A. 1, pp. 3-4)

Sgt. James testified in his deposition that Defendant Centralia had trained him in the parameters of constitutionally protected free speech (S. A. 6, pp. 84-85). Sgt. James testified that the City had trained him that speech that "offends somebody" is beyond the protection of the First Amendment. (S. A. 6, pp. 84-85). He elaborated that someone calling officers "pigs" would be an exception to offensive speech being unprotected, but cited no other exceptions, such as an exception for speaking or yelling profanity at an officer. (S. A. 6, p. 85).

Defendant Peebles testified in his deposition that when he made his sworn statement he was seeking to have Appellant arrested (S. A. 5, p. 77). Defendant Peebles further testified that he was seeking to have Appellant prosecuted. (S. A. 5, p. 77).

## SUMMARY OF ARGUMENT

A reasonable jury could conclude that Appellant's alleged calling of Defendant "mother f*cker" and referring to him as a "b*tch" were improperly used by Defendants to establish probable cause for Appellants arrest despite such communications being

within the parameters of constitutionally protected free speech.  Further, a reasonable jury *might* conclude that Appellant's purported use of profanity, that is, "mother f*cker" toward Defendant Peebles was the metaphorical "straw that broke the camel's back" in causing Sgt. James to make his arrest decision.

In granting summary judgment, the District Court apparently relied heavily on facts alleged by the Defendants that were only relevant if Appellant had connections to members of the Rude Boys gang.  ( S. A. 2, pp. 1-3).  As previously asserted, Appellant testified that she had no connections with any gang members and did not know alleged Rude Boys Albert Gardner or Joevionte Sims.  A reasonable jury may well conclude that Defendant Peebles' conclusions that Appellant was in cahoots with any gang members were wild speculations unsupported by facts rather than being reasonable inferences.  Such a conclusion would leave a jury with the content of the Facebook posts and the disputed allegation that Appellant yelled a profane epithet at Defendant Peebles on the date that she was arrested with which to determine if probable cause for Appellant's arrest existed.

## ARGUMENT

A common sense evaluation from disinterested jurors may result in a conclusion that "what comes around goes around" is nothing more than a common proverb indicating that a person some day will likely face consequences for his/her action(s) commensurate with those action(s).  A jury may well conclude that the use of that proverb implies not even a vague threat by the speaker to herself cause any such consequence.  Similarly, a reasonable jury may well conclude that the use of

"when you've got kids of your own" merely conveys that anyone with children should be careful to treat others the way that person would want his/her children to be treated.

Defendant Peebles knew or had reason to know that Appellant was a long-standing member of the Centralia community, was a middle-aged mother of two minor children, had been employed by the State of Illinois at a facility for the developmentally disabled for more than two decades, had no criminal record, and had become known to him because she made a criminal complaint against someone else. Such facts may be weighed by the jury in determining if it were likely that Appellant was making a threat of physical harm against Defendant Peebles' children. A reasonable jury may well conclude that Defendant Peebles' conclusions that Appellant was in cahoots with Albert Gardner and Joevionte Sims were fanciful at best and farcical at worst. Consequently, such a jury may conclude that evidence related to Garnder, Sims, or other Rude Boys members, had no probative value and should not be considered when evaluating whether to arrest Appellant.

A reasonable jury may conclude that Defendant Peebles was doing more than merely relaying facts to the Centralia police department related to Appellant and that he was acting with malice. A reasonable jury might conclude Defendant Peebles' inferences of threats of harm to his children were not objectively inferable from Appellant's social media posts. A reasonable jury might also conclude that his purported communication of his conclusion that such threats occurred went beyond relaying facts, was motivated by malice, and was done specifically to cause the arrest

and prosecution of Appellant. Clearly, as a matter of law, Defendant Peebles' subjective belief is not sufficient for probable cause to arrest Appellant. An objectively reasonable belief that Appellant committed a crime is necessary.

A reasonable jury consequently could conclude that Sgt. James arrested Appellant without probable cause in light of the fact that he had just been given a legal opinion from a licensed attorney indicating that the presence of probable cause was not clear-cut. Further, the jury could conclude that Sgt. James might not have made the arrest had Defendant Peebles not falsely told Sgt. James that an assistant state's attorney wanted Appellant arrested and/or had not been told by Defendant Peebles that Defendant Peebles believed Appellant made a threat of harm to his children.

### Standard for Probable Cause

In *Brinegar v. U. S.*, 338 U.S. 160, 175-176 (1949), the Court held that probable cause only exists in circumstances where "the facts and circumstances" within an officer's knowledge, and of which the officer had "reasonably trustworthy information" indicate that a crime is being or has been committed. A determination of whether probable cause exists should include evaluation of available facts as to whether there is probable cause and that "a totality of the circumstances" is to be used. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause hinges on the "assessment of probabilities in particular factual context..." *Id* at 232. The "probability of criminal activity" is the standard for probable cause. *Beck v. Ohio*, 379 U. S. 89, 379 (1964).

**Standard for Color of State Law Liability**

A municipal government can be held liable under § 1983 if a Plaintiff can demonstrate that a deprivation of a federal right occurred from a "policy" of the of municipality. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In such instances a municipality itself may be held to have been acting under color of state law and liable under § 1983. *Ibid.*

A municipality's failure to train its officer may be sufficient to show the necessary color of state law if such failure to train is deemed to show deliberate indifference to the rights of those arrested. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-392 (1989). If a municipality's training is not adequate to the tasks that employees face, then such inadequate training may be deemed to represent "city policy" under § 1983. *Ibid.* If it believes that police officers for the City of Centralia likely routinely face individuals yelling profanity at them, a reasonable jury may find that Defendant Centralia's failure to train Sgt. James that yelling profanity at an officer, though offensive speech, is yet protected speech, may result in the jury's deeming that Defendant Centralia is liable to Appellant under § 1983. Defendants' apparent use of Appellant's alleged communication involving profanity as a basis to justify her arrest may also result in a reasonable jury concluding that the City of Centralia has failed to adequately train its officers that the use of profanity alone against a police officer is not criminal conduct but rather is constitutionally protected free speech as has been the law at least since 1971. *Cohen v. California*, 403 U.S. 15,

20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).  Additionally, in certain circumstances a failure to adequately supervise officers may give rise to § 1983 liability.  *Wellington v. Daniels,* 717 F.2d 932, 936 (CCA 4 1983).  A reasonable jury therefore could conclude color of state law existed, which is necessary for the federal claims, albeit not the state law tort claim.

The facts viewed in the light most favorable to the Appellees could potentially result in a reasonable jury's holding the Defendants not liable.  On the contrary, a jury adopting the facts in the light most favorable to the Appellant, could clearly render a verdict on behalf of Appellant Shirlena Barnes on all counts.

### Standard for Summary Judgment

For summary judgment to be appropriate a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* Fed. R. Civ. P. 56(a).  In determining if summary judgment should be granted, a court must view the evidence in the light most favorable to the non-moving party.  *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 658 (7th Cir. 2001).  Further it must draw all reasonable inferences in favor of the non-moving party.  *Ibid.*

In cases where the nonmoving party has the burden of proof at trial, as is in the instant case, the moving party is entitled to summary judgment only where the non-moving party cannot muster sufficient evidence to make out its claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986.)  Summary judgment is a drastic remedy that should be granted only if no triable issue of fact exists and the movant

is entitled to judgment as a matter of law. *Andre v. Pomeroy*, 35 N.Y.2d 361, 364., *Prospect Hospital*, 68 N.Y. 2d 320, 324 (1986).

For Appellant to make out her claim on the federal counts, she must show that a reasonable jury *could* conclude that the City of Centralia lacked probable cause for her arrest on the charges of Intimidation and Aggravated Intimidation and that either Defendant Centralia or Defendant Peebles was acting under color of state law in effecting her seizure. To succeed on her state law tort claim, she must show that probable cause did not exist, that Defendant Peebles caused her prosecution without probable cause, and that he did so with malice.

The content of Appellants' Facebook posts referenced in the police report of her arrest are not in dispute. However, a reasonable jury may, and likely would, conclude that nothing in her posts was a communication of an unlawful threat of harm to Defendant Peebles or any member of his family.

Here the granting of summary judgment is apparently based upon the District Court's viewing the facts not in the light most favorable to the Appellant. A reasonable jury may evaluate the facts otherwise.

A reasonable jury may conclude that Defendant Centralia failed to adequately train Sgt. James about what constitutes constitutionally protected free speech, particularly with regard to the use of profanity toward a police officer. The jury may well conclude that such lack of training shows the requisite deliberate indifference to hold Defendant Centralia it liable for the harm caused to Appellant under § 1983 and to establish color of state law.

## CONCLUSION

The District of Court's granting of summary judgment in favor of Defendants and dismissal of Appellant's cause was granted based should be reversed. A reasonable jury may in fact conclude that Defendants did not have probable cause for the arrest. Additionally, a reasonable jury may hold that Defendant Centralia was responsible for Appellant's arrest due to a failure to properly train its officer that speech that merely offends, even involving the use of profanity toward a police officer, is not beyond the protection of the First Amendment. Appellant has requested and is entitled to a jury trial on these issues.


Dated: April 25, 2019

/s/ Frank R. Ledbetter
Frank R. Ledbetter
Admitted *Pro Hac Vice*
141 N. Meramec Avenue, Suite 24
Saint Louis, MO 63105
(314) 535-7780-Phone
(314) 533-7078-Fax
stlatty@gmail.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type limitations provided in Federal Rule of Appellate Procedure 32(a)(7).  The foregoing brief was prepared using Microsoft Word 2016 and contains 3,094 words in 12-point proportionately-spaced Century Schoolbook font.

/s/ Frank R. Ledbetter
Frank R. Ledbetter

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2019, I electronically filed the foregoing Appellant's Brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Frank R. Ledbetter
Frank R. Ledbetter

*Counsel for Appellant*

# REQUIRED SHORT APPENDIX

## *Contents*

Appellee's Motion for Summary Judgment…………………………………………… S. A. 1

Memorandum and Order in Support of Summary Judgment…………………… S. A. 2

Shirlena Barnes Deposition Transcript……………………………………………… S. A. 3

Police Arrest Report……………………………………………………………………… S. A. 4

Michael Peebles Deposition Transcript…………………………………………… S. A. 5

Jamie James Deposition Transcript………………………………………………… S. A. 6

Complaint……………………………………………………………………………………… S. A. 8

Sworn Statement by Michael Peebles……………………………………………… S. A. 9

Judgment in a Civil Action……………………………………………………………S. A. 10

## *Certificate*

Pursuant to Circuit Rule 30(d).  I hereby certify that this short appendix includes all the materials required by Circuit Rules 30(a) and (b).

<u>/s/ Frank R. Ledbetter</u>
Frank R. Ledbetter

*Counsel for Appellant*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
### EAST SAINT LOUIS DIVISION

SHIRLENA BARNES,    )
          )
    Plaintiff,   )
          )
  v.        )   Case No. 17-cv-01366-NJR-RJD
          )
CITY OF CENTRALIA, ILLINOIS and )
MICHAEL PEEBLES in his individual )
capacity,       )
          )
    Defendants.  )

## MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF DEFENDANTS  CITY OF CENTRALIA AND MICHAEL PEEBLES

NOW COME Defendants, CITY OF CENTRALIA and MICHAEL PEEBLES, by and through one their attorneys, Michael J. Victor and Brian M. Funk, and for their Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(c) and Supporting Memorandum, Defendants state as follows:

### INTRODUCTION

On December 18, 2017, Plaintiff filed a four-count Complaint against City of Centralia police officer Michael Peebles (hereinafter "Peebles") and the City of Centralia (hereinafter the "City") (Peebles and the City are, collectively, hereinafter "Defendants") related to Plaintiff's arrest on September 17, 2016 and her subsequent criminal prosecution for intimidation and aggravated intimidation. *Doc*. 1 (Complaint).  Plaintiff's claims are as follows:  1) Fourth Amendment Unlawful Seizure against Peebles pursuant to 42 U.S.C. § 1983; 2) Malicious Prosecution against Peebles pursuant to 42 U.S.C. § 1983; 3) *Monell* liability against the City pursuant to 42 U.S.C. § 1983; and 4) Malicious Prosecution against Peebles pursuant to Illinois

1

law.  Defendants are entitled to summary judgment as to all of Plaintiff's claims for the reasons set forth *infra*.

## FACTS

Peebles is a Centralia police officer who is actively involved in combatting gangs in Centralia, including a gang called the "Rude Boyz."  *Peebles Dep*. 15:10-17, 102:23-24, 103:1-6.[1]  Peebles has arrested many members of the Rude Boyz.  *Peebles Dep*. 103:7-9.  The Rude Boyz are well known to Centralia police officers and are considered a dangerous and violent gang.  *Peebles Dep*. 103:10-15; *James Dep*. 69:11-16.[2]  Peebles was known as the "go-to-guy" regarding collecting intel on the Rude Boyz.  *James Dep*. 37:23-24, 38:1-7.  According to a confidential informant, the Rude Boyz had even talked about putting a hit out on Peebles. *Peebles Dep*. 103:20-24, 104:1-3; *James Dep*. 70:1-5; *Hempen Dep*. 14:3-24, 15:1-10, *Ex*. 3.[3]

Prior to September 17, 2016, members of the Rude Boyz were involved in a shooting at Laura Leake Park in Centralia.  *Peebles Dep*. 56:9-24, 57:1-24, 58:1-22.  One of the shooters fled and left his bicycle at the scene.  *Peebles Dep*. 58:2-28.  The Centralia police department acquired a video of that shooting, which shows Plaintiff's daughter coming to the scene of the crime and retrieving the shooter's bicycle.  *Peebles Dep*. 58:2-28.

A 12 year old boy witnessed the shooting.  *Peebles Dep*. 57:1-24.  The boy was subsequently threatened by Albert Gardner and Joveionte Sims, two members of the Rude Boyz. *Peebles Dep*. 57:1-24, 58:1.  On September 17, 2016, Peebles spoke with Marion County Assistant State's Attorney, Melissa Doran, about the threats to the minor witness and informed her that he would attempt to arrest Gardner and Sims to provide some relief.  *Peebles Dep*. 57:1-24, 58:1-10.

---

[1] Officer Michael Peebles' deposition transcript is attached hereto as *Exhibit A*.
[2] Sergeant Jamie James' deposition transcript is attached hereto as *Exhibit B*.
[3] Sergeant Todd Hempen's deposition transcript is attached hereto as *Exhibit C*.

On September 17, 2016, at approximately 6:05 p.m., Peebles and Sergeant Jamie James arrested Gardner and Sims. *Ex*. D (Report of arrest of Sims and Gardner). Both Gardner and Sims were arrested pursuant to existing warrants for weapons and obstruction of identification charges. *Ex*. D. Gardner has since been killed by a rival gang and Sims is awaiting trial for murder in Kentucky. *Peebles Dep*. 33:8-21, 34:15-20.

As Peebles and James were arresting Gardner and Sims, Plaintiff drove by the scene of the arrest with her daughter and niece. *Barnes Dep*. 37:24-25, 38:1-25, 39:1-2, 42:24-25, 43:1, 44:5-25.[4] Plaintiff parked her vehicle across the street from the scene of the arrest. *Barnes Dep*. 45:2-4. When Plaintiff stopped she did not know why Gardner and Sims were being arrested or if they were being arrested pursuant to existing warrants. *Barnes Dep*. 45:5-19. While at the scene, Plaintiff stood by her vehicle and yelled obscenities at Peebles, calling him "thirsty" and a "bald motherfucker." *Peebles Dep*. 59:10-24, 60:1-24, 61:1-15; *James Dep*. 19:11-23, 20:6-24, 21:1-12, 82:2-18, 86:9-13. Barnes was angry and hostile at the scene of the arrest. *Peebles Dep*. 99:4-17; *James Dep*. 20:21-24, 21:1-12.

Shortly after the arrest, Plaintiff posted a message on Facebook stating "This thirsty bitch Mike out here on the same on (sic) bullshit." *Barnes Dep*. *Ex*. 2. After a response was posted by a third party, Plaintiff posted another message stating, "But this bitch don't believe that what comes around goes around and when you got kids of your own." *Barnes Dep*. *Ex*. 2.

Connie Ballentini, a secretary at the Centralia police department, saw the post and texted it to Peebles. *Peebles Dep*. 41:2-13. After reading the post, Peebles called Marion County Assistant State's Attorney Melissa Doran from his home. *Peebles Dep*. 55:10-12, 68:1-16. Peebles thought Plaintiff's Facebook post was a credible threat because of the Rude Boyz'

---

[4] Plaintiff's deposition transcript is attached hereto as *Exhibit E*.

3

attempts to intimidate other witnesses and because Plaintiff and Plaintiff's family had connections to the Rude Boyz. *Peebles Dep*. 65:5-20. Doran told Peebles that she could not tell him what to do but that he could file a report like a private citizen if he so desired. *Peebles Dep*. 56:9-24, 67:18-24, 68:1-16, 69:2-24, 71:18-24, 72:1-13. Peebles subsequently called James and told him about Plaintiff's Facebook post. *Peebles Dep*. 72:14-24; 73:1-10. Peebles told James that he believed Plaintiff had threatened his family. *Peebles Dep*. 72:14-24; 73:1-10.

James told Peebles that he would send Centralia Police Officer Andrew Harvard to take his statement. *Peebles Dep*. 73:4-10. Harvard was dispatched to Peebles home where Peebles gave Harvard his statement. *Harvard Dep*. 23:1-11[5]; *Ex*. G (Peebles witness statement). In his statement, Peebles stated that Barnes had come to the scene of the arrest of Gardner and Sims and yelled obscenities at him. *Ex*. G. Peebles also provided Harvard with a verbatim recitation of the Facebook post. *Ex*. G.

In addition to obtaining Peebles statement, James texted Doran who told James that the discretion on whether to arrest Plaintiff lied solely with him. *James Dep*. 33:17-24, 34:1-10, 36:5-18; 60:4-9, *Ex*. H (Text messages between James and Doran). James decided to arrest Plaintiff for intimidation. *James Dep*. 103:20-24. James testified that the decision to arrest Plaintiff was his and his alone and was based on a totality of the circumstances. *James Dep*. 64:211, 103:20-24. James testified that Plaintiff and her family were associated with the Rude Boyz and that her house was used as a safe house for the gang's members. *James Dep*. 36:19-24, 37:1-24; 54:5-24, 60:10-24, 69:17-24.

James believed that Plaintiff's involvement with the Rude Boyz and the Rude Boyz previous threats against other witnesses made Plaintiff's Facebook post a credible threat. *James Dep*. 36:19-24, 37:1-24; 54:5-24, 60:10-24, 64:1-24, 67:1-18. James believed Plaintiff's

---

[5] Officer Andrew Harvard's deposition transcript is attached hereto as *Exhibit F*.

Facebook post was a threat directed towards Peebles' children. *James Dep*. 65:15-19.  At the time of Plaintiff's arrest, James was aware that the Rude Boyz had put out a hit on Peebles. *James Dep*. 70:1-5.  James had also seen Plaintiff at the scene of the arrest of Gardner and Sims yelling obscenities at Peebles. *James Dep*. 70:6-17.  James believed Plaintiff was attempting to intimidate Peebles into not arresting members of the Rude Boyz. *James Dep*. 71:1-8.

James arrested Plaintiff with the assistance of several other Centralia police officers. *Bundy Dep*. 14:4-11[6], *Ex*. J (Report for Plaintiff's arrest). Peebles did not arrest Plaintiff and Peebles was not involved in the investigation into his private complaint aside from providing Harvard with a witness statement. *Peebles Dep*. 107:10-22.  Peebles did not know Plaintiff was arrested until September 18, 2016. *Peebles Dep*. 86:22-24, 87:1-13.  Peebles did not know what crime Plaintiff was ultimately charged with and Peebles was never contacted by the Marion County State's Attorney's office about the case. *Peebles Dep*. 93:3-20.  Peebles made his complaint against Plaintiff as a private citizen. *Peebles Dep*. 107:13-16; *James Dep*. 71:20-23. The Marion County State's Attorney prosecuted Plaintiff for the charge of Intimidation and Aggravated Intimidation. *Barnes Dep. Ex*. 4; *James Dep*. 72:14-19.  On December 20, 2016, an order of *nolle prosequi* was entered, which ended the prosecution. *Ex*. K (Order).

**Plaintiff's Testimony**

At the time of her arrest, Plaintiff knew Peebles. *Barnes Dep*.  24:25, 25:1-4.  Peebles arrested numerous members of Plaintiff's family. *Barnes Dep*.  pp. 25-33.  Plaintiff took issue with Peebles over the arrest of her family members. *Barnes Dep*.  28:14-21.  Plaintiff does not know if any of the arrests were deemed unlawful. *Barnes Dep*.  30:20-24. Plaintiff admitted that she stopped at the scene of the arrest of Gardner and Sims. *Barnes Dep*. 42:15-25, 43:1. Plaintiff claims that she did not get out of her care or say anything to Peebles while at the scene

---

[6] Officer Ryan Bundy's deposition transcript is attached hereto as *Exhibit I*.

of the arrest. *Barnes Dep.* 45:16-25. Plaintiff admits she made the Facebook post which led to her criminal charges. *Barnes Dep.* 52:1-5. Plaintiff testified that she did not know what she meant by "thirsty" and that it could mean hungry. *Barnes Dep.* 52:11-17.

Plaintiff testified under oath that the Facebook post was not about Peebles, although she never raised that defense in her criminal case. *Barnes Dep.* pp. 52-54. Plaintiff confirmed several times during her deposition that the post was not about Peebles. *Barnes Dep.* pp. 52-54. Plaintiff never stated she did not understand counsel's questions or ask for a question to be clarified. *Barnes Dep.* pp. 52-54. Plaintiff testified that her statement that "this bitch don't believe that what comes around goes around and when you got kids of your own" was directed towards "anybody." *Barnes Dep.* pp. 55:9-14. Plaintiff testified that her statement was referring to karma and that you should treat other people's kids the way you want yours treated. *Barnes Dep.* pp. 52-63. Plaintiff testified that her post meant what comes around goes around. *Barnes Dep.* pp. 63:17-20. Plaintiff testified, however, that did not mean anything bad would happen to Peebles' children as a result of karma. *Barnes Dep.* pp. 61:21-25. Plaintiff was then asked by her attorney whether she was confused about all of the questions she had been asked about the Facebook post. *Barnes Dep.* pp. 130-134. Plaintiff then admitted that the Facebook post was directed at Peebles. *Barnes Dep.* pp. 130-134.

## STANDARD FOR MOTION

"The court shall grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To defeat a motion for summary judgment, the non-moving party must set forth evidence that demonstrates a genuine dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Where the factual allegations presented by the non-moving party would not lead a reasonable

jury to find for that party, there is no genuine dispute of material fact and the district court should

grant summary judgment. *Id.* at 249. In deciding a motion for summary judgment, the court will

read the facts in the light most favorable to the non-moving party but will not draw "[i]nferences

that are supported by only speculation or conjecture." *Fischer v. Avanade, Inc.*, 519 F.3d 393,

401 (7th Cir. 2008). Summary judgment is "the put up or shut up moment" in the lawsuit and

Plaintiff "must show what evidence [he] has that would convince a trier of fact to accept [his]

version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007).

## ARGUMENT

I.    **Defendants are entitled to summary judgment as to Plaintiff's Fourth Amendment claims against Defendant Peebles (Counts I-II), because he lacked personal involvement for Plaintiff's arrest.**

Counts I and II are, respectively, Fourth Amendment claims against Defendant Peebles

pursuant to § 1983.   Because a § 1983 defendant cannot be vicariously liable for the conduct of

others, personal involvement is prerequisite to liability under §1983.  *Gossmeyer v. McDonald*,

128 F.3d 481, 495 (7th Cir. 1997); *Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003).

Plaintiff's Fourth Amendment claims against Peebles are nonstarters because Peebles had

no personal involvement in Plaintiff's arrest.  The only involvement Peebles had in Plaintiff's

arrest was that he made a private complaint.  Plaintiff was not involved in Plaintiff's arrest or the

Centralia Police Department's investigation into his complaint.  In fact, Peebles never even knew

what crime Plaintiff was charged with. Plaintiff's theory of personal responsibility in both

Counts I and II is that Peebles obtained a warrant for Plaintiff's arrest.  *Compl*. ¶¶ 28-31, 36, 42.

Plaintiff, however, has failed to present any evidence that Defendant Peebles obtained a warrant

or that a warrant was ever issued.  *Ex.* L, ¶94 (Expert report of Jack Ryan).   Therefore,

Defendants are entitled to summary judgment.

7

II.     **Defendants are entitled to summary judgment as to Plaintiff's Fourth Amendment claims against Defendant Peebles (Counts I-II), because Defendant Peebles was not acting under color of law when he made a voluntary statement about Plaintiff as a private citizen.**

In order to state a § 1983 claim, a plaintiff must establish that the defendant was a "person acting under color of state law." 42 U.S.C. § 1983.  Acts of state officials "in the ambit of their personal pursuits" are not state action.  *Screws v. United States*, 325 U.S. 91, 111 (1945). If the defendant was "acting as a private citizen, rather than as a police officer" there cannot be a violation of federally rights.    *Latuszkin v. City of Chicago*, 250 F.3d 502, 506 (7th Cir. 2001).

The act of signing a complaint as a victim of a crime is "nothing more than that the act of a private citizen." *Teta v. Packard*, 959 F. Supp. 469, 476 (N.D. Ill. 1997). A private citizen "does not become a state actor just because he reports a crime."  *Sasso v. Davis*, No. 84 C 6268, 1986 WL 12591, at *5 (N.D. Ill. Nov. 3, 1986).  Police officers "like other citizens, have the right not only to call the police when they feel victimized, but to do so without rendering themselves liable under § 1983." *Mauntel v. Briscoe*, No. 93 C 6579, 1995 WL 319646, at *1 (N.D. Ill. May 26, 1995)

In *Smith v. Avent*, the police sued a police officer for false arrest and malicious prosecution. 1999 WL 33891, at *1 (N.D. Ill. Jan. 15, 1999).  The police officer had filed a criminal complaint against the plaintiff alleging that she repeatedly called her at home and at work and made threats that she knew where the officer worked and where her children were.  *Id.* The officer further added that the plaintiff refused to stop harassing her despite the plaintiff's awareness that she was a police officer.  *Id*.  The officer filed the complaint with her own department and the plaintiff was subsequently arrested.  *Id.*  The court dismissed the complaint, holding that the plaintiff failed to establish that the officer's acts were committed under color of law.  *Id.*  The court reasoned that the officer actions amounted to a "citizen filing a complaint

8

against another citizen" that fact that the defendant was a police officer was irrelevant.  *Id.*  A police officer may file a complaint, "like any other citizen may."  *Id.* at *3; *see also  Mauntel*, 1995 WL 319646, at *1 (mere  recitation by complaining witness to police that he was a police officer did not trigger color of law component of § 1983).

In the case at bar, Peebles completed a voluntary statement while off-duty and at his home, because he felt that Plaintiff's Facebook post was a credible threat to his family.   Peebles involvement did not go any further.  As set forth *supra*, Peebles did not arrest Plaintiff, Peebles did not participate in the investigation of his private complaint and Peebles was not involved in the subsequent criminal prosecution.   Moreover, James testified that the decision to arrest Plaintiff was made solely by him.  *James Dep.* 103:20-24. As demonstrated by the above cases, Peebles does not lose a right to alert to police to a concern simply because he happened to be a police officer.  *Smith*, 1999 WL 33891, at *3; *Ex.* L, ¶¶ 82, 92.   Therefore, Defendants are entitled to summary judgment.

## III.    Plaintiff's § 1983 malicious prosecution claim in Count II is not actionable.

In Count II, Plaintiff brings a § 1983 claim for malicious prosecution based on theory that Peebles participated in the decision to prosecute, but that he lacked probable cause. *Compl.* ¶¶ 36-38.  However, the Seventh Circuit has held that "[t]here is no such thing as a constitutional right not to be prosecuted without probable cause."  *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018).   As a result, Plaintiff's federal malicious prosecution claim is not viable.  Therefore, Defendants are entitled to summary judgment.

9

IV.    **Defendants are entitled to summary judgment as to Plaintiff's Fourth Amendment claims against Defendant Peebles (Counts I-II), because probable cause existed to arrest Plaintiff.**

As set forth *supra*, Peebles did not arrest or detain Plaintiff, and therefore, he had no personal involvement.  Peebles was acting as a private citizen, not as a police officer.  Even if any of Peebles' actions could be construed as establishing personal involvement sufficient to state a Fourth Amendment claim, such claims still fail because probable cause existed.

Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest or false imprisonment.  *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).   Likewise, probable cause defeats a claim Fourth Amendment claim under *Manuel* for unlawful pretrial detention.  *See Williams v. City of Chicago*, *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1070 (N.D. Ill. 2018) (lack of probable cause is a necessary element of a *Manuel*-based Fourth Amendment claim).[7]

"Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense."  *Mustafa*, 442 F.3d at 547 (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)).  "[S]ubjective intentions play no role in ordinary, probable-cause *Fourth Amendment* analysis."  *Whren v. United States*, 517 U.S. 806, 812-13 (1996).  Probable cause is still an absolute defense "even where the defendant officers acted upon a malicious motive."  *Mustafa*, 442 F.3d at 547.  The probable cause standard does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable.  *Fleming v. Livingston Cty., Ill.*, 674 F.3d 874, 879 (7th Cir. 2012).

_____

[7] As referenced above, Plaintiff styles his Count II a "malicious prosecution claim" which is not cognizable after *Manuel*.  Even if Plaintiff had properly alleged a *Manuel*-based claim, the claim fails because probable cause existed.

10

The Seventh Circuit has "consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)(collecting cases). "The police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency." *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005). Along those lines, "[p]olice officers are entitled to rely on allegations of other officers." *Marchetta v. Chicago Transit Auth.*, No. 01 C 4838, 2002 WL 172447, at *4 (N.D. Ill. Feb. 4, 2002). Further, once there is probable cause, officers have "no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." *Schertz v. Waupaca Cty.*, 875 F.2d 578, 583 (7th Cir. 1989).

Probable cause existed to arrest Plaintiff for intimidation and aggravated intimidation. The purpose of the intimidation statute is to prohibit the making of specified threats intended to compel a person to act against the person's will, and the gravamen of the offense of intimidation is the exercise of improper influence, the making of a threat with the intent to coerce another. *People v. Maldonado*, 247 Ill. App. 3d 149, 153 (1st Dist.1993).

A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he or she communicates to another a threat to: inflict physical harm on the person threatened or any other person or on property; commit a felony or Class A misdemeanor; or expose any person to hatred, contempt or ridicule. 720 ILCS 5/12-6. A person commits aggravated intimidation when she commits intimidation and the person knew that the victim was a peace officer and the offense was committed to prevent the victim from performing his or her official duties or in retaliation for the victim's performance of his or her official duties. 720 ILCS 5/12-6.2(a)(3)(B).

11

Implicit in the word "threat" as it is used in the intimidation statute is the requirement "that the expression in its context have a reasonable tendency to create apprehension that its originator will act according to its tenor." *Maldonado*, 247 Ill. App. 3d at 153–54.   "When the circumstances are such that the threat of physical harm can be inferred, it is unnecessary that the defendant state exactly how he proposes to harm the victim." *People v. Peterson*, 306 Ill. App. 3d 1091, 1100 (2d Dist. 1999).   Also, the statements that constitute the threat must view within their context. *People v. Maldonado*, 247 Ill. App. 3d 149, 154, 617 N.E.2d 236, 239 (2d Dist. 1993).

In *Long v. McDermott,* the plaintiff, after being arrested, sent the arresting officer an envelope with a newspaper article containing a quote from President Bush, which included the words:   "The nation is peaceful, but fierce when stirred to anger." No. C 55550, 2005 WL 309552, at *3–4 (N.D.Ill. Feb.8, 2005).  The officer filed an intimidation case report and, during the subsequent trial on the charge of aggravated intimidation, the plaintiff told the officer outside the courtroom: "You are a joke; I'm going to get you." *Id.* at *2.   The plaintiff sued for false arrest, but the court held that there was probable cause to support an arrest for aggravated intimidation. *Id.* at *4; *see also Cooper v. City of Chicago*, No. 11 C 6233, 2012 WL 4061039, at *3 (N.D. Ill. Sept. 14, 2012) (probable cause existed to arrest plaintiff for intimidation where, after an officer refused to allow  the plaintiff to see a detective, the plaintiff pointed at the officer and said: "I'll meet you in the parking lot.  What time do you get off?").

In the case at bar, James had probable cause to arrest Plaintiff and the existence of probable cause is another reason why Plaintiff's claims against Peebles fail.  The totality of circumstances clearly establish probable cause for an arrest for intimidation or aggravated intimidation, including:  the knowledge that the Rude Boyz were a violent gang; the knowledge

12

that the Rude Boyz intimidated witnesses to crimes; the knowledge that the Rude Boyz had made threats toward Peebles; the knowledge of Plaintiff her daughter having an association with the Rude Boyz; the fact that Plaintiff showed up at the scene of the arrest of Gardner and Sims and yelled obscenities at police officers; the knowledge that Plaintiff's house was a safe house for the Rude Boyz; the knowledge that the Rude Boyz were violent and had weapons; the interpretation by James that, based on his personal observation of Plaintiff at the scene, Plaintiff was attempted to prevent the arrest of Sims and Gardner; the knowledge that Peebles had arrested many of Plaintiff's family members; Plaintiff posting a message on Facebook that was directed at Peebles and could be reasonably construed by an objective officer as hostile in tone (*e.g.* "thirsty bitch"); Plaintiff posting a Facebook message about Peebles which contain the phrase "what goes around comes around" which could be reasonably construed by an objective officer as a threat towards Peebles to suppress any further police action; the knowledge that Peebles, the victim, was concerned that the post was a threat towards his kids and family; and the determination than an arrest by James was a step towards protecting Peebles from being threatened like other witnesses. Therefore, Defendants are entitled to summary judgment.

## V.   Defendants are entitled to summary judgment as to Plaintiff's Fourth Amendment claims against Defendant Peebles (Counts I-II), because Defendant Peebles has qualified immunity.

Qualified immunity "protects government officials from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Viilo v. Eyre,* 547 F.3d 707, 709 (7th Cir. 2008) The qualified immunity analysis comprises a two-part inquiry: (i) "whether the facts alleged show that the state actor violated a constitutional right," and (ii) "whether the right was clearly established." *Hanes v. Zurick,* 578 F.3d 491, 493 (7th Cir. 2009).  One of the best indications that

13

constitutional standards are not clearly established is if court opinions, in the relevant time period, yield different outcomes as to similar issues. *Forman v. Richmond Police Dep't*, 104 F.3d 950, 960 (7th Cir. 1997). The United States Supreme Court has repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018)

An officer is entitled to qualified immunity if "arguable probable cause" exists at the time of the officer's challenged conduct. *Fleming v. Livingston County*, 674 F.3d 874, 880 (7th Cir. 2012). This determination (though closely related) is separate and distinct from the probable cause analysis. *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015). Arguable probable cause exists "when 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Fleming*, 674 F.3d at 880. Because the law does not require perfection from officers, qualified immunity protects officers who reasonably but mistakenly believe they have probable cause. *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013).

In *Townsend v. Basterrechea*, the plaintiff was arrested, and before his pre-trial hearing on the charged, he wrote and posted a Facebook post on the arresting officer's Facebook page. No. 1:16-CV-151-BLW, 2017 WL 242606, at *1 (D. Idaho Jan. 18, 2017). The Facebook post stated that if the charges were not dismissed, the plaintiff was "will begin a nonviolent and legal shame campaign that will be remembered." *Id.* The post added that the state had three options: "1. Drop the charges and leave me alone [;] 2. Endure my non-violent retaliation (do you want to be the focus of my rage?); [; and]3. Kill me and deal with those that know, love and care about me." *Id.* The plaintiff linked the post to four relatives of the officer. *Id.* Based on the post, a

14

different officer arrested the plaintiff under Idaho's statute for intimidation. *Id. at *2.* The plaintiff sued that officer under 1983. However, the court held that the officer was entitled to summary judgment. It reasoned that, while the post sent mixed signals, aspects of it could lead a reasonable officer to conclude that it was intended to instill fear. *Id.* The court further added that the plaintiff cited no legal authority showing that the constitutional right he asserts here was clearly established at the time of the alleged constitutional violation. *Id.* at *3.

Even if James somehow lacked technical probable cause for the arrest, he at least had arguable probable cause. As a result, Peebles would be entitled to qualified immunity if the Court determines he had any personal involvement in Plaintiff's arrest. At the time of the arrest, there was no clearly established law that a police officer would be subjected to constitutional liability if the officer, like a private citizen, made a statement to the police about a threat to his family. Therefore, Defendants are entitled to summary judgment.

## VI.    Defendant City is entitled to summary judgment as to Plaintiff's Count III *Monell* claim.

A municipality may not be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, it can be liable under § 1983 if (1) it had an express policy calling for constitutional violations, (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law or (3) if a person with final policymaking authority for the goverment caused the constitutional violation. *Id.*at 694;  *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). A governmental body is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the violation. *Monell*, 436 U.S. at 694.

15

Any *Monell* claim against the City fails because, as set forth *supra*, there is no underlying constitutional violation.    There can be no *Monell* liability where there is no underlying constitutional violation.    *See Matthews v. City of East St. Louis*, 675 F.3d 703,709 (7th Cir. 2012).    Moreover, there is absolutely no evidence in this case that the City's police department had any express policies or a widespread practice that were the "moving force" behind Plaintiff's arrest.    In addition, there is no evidence that any final policymaker played any role in Plaintiff's arrest.    Therefore, Defendants are entitled to summary judgment.

**VII.    Defendant Peebles is entitled to summary judgment on Plaintiff's malicious prosecution claim.**

A plaintiff must establish the following elements to succeed on an Illinois state law malicious prosecution is the following elements: (1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for the proceeding; (4) malice; and (5) damages.    *Reynolds v. Menard, Inc.*, 365 Ill. App. 3d 812, 818-19 (1st Dist. 2006); *Ross v. Mauro Chevrolet*, 369 Ill. App. 3d 794, 802 (1st Dist. 2006).    "Illinois does not favor a suit for malicious prosecution due to the public policy interest in the exposure of crime." *Ross*, 369 Ill.App.3d at 801.

The existence of probable cause for is complete defense to false arrest and malicious prosecution actions under both Illinois and federal law. *Penn v. Chicago State Univ.*, 162 F. Supp. 2d 968, 975 (N.D. Ill. 2001), *aff'd sub nom. Penn v. Harris*, 296 F.3d 573 (7th Cir. 2002) *Mannoia v. Farrow*, 476 F.3d 453, 459 (7th Cir. 2007) (the "finding that the arrest warrant was supported by probable cause precludes [the plaintiff] from recovering on his claims of false arrest and malicious prosecution because under Illinois law, lack of probable cause is an essential element of both torts."); *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 73 (1st Dist. 2003).

The existence of probable cause defeats a malicious prosecution claim.  Because probable cause existed as to Counts I and II, as explained *supra*, probable cause exists as to Count IV.  As a result, Defendant Peebles is also entitled to summary judgment as to Plaintiff's malicious prosecution claim.  Therefore, Defendants are entitled to summary judgment.

WHEREFORE, the Defendants, the City of Centralia, Illinois and Michael Peebles, respectfully request that this court enter summary judgment in Defendants' favor as to all counts in Plaintiffs' Complaint and grant them whatever other relief the court may deem just, equitable, reasonable and fair.

**CITY OF CENTRALIA and**
**MICHAEL PEEBLES**

By:   *S/ Michael J. Victor*
       Michael J. Victor, #6297846
       O'Halloran Kosoff Geitner & Cook, LLC
       650 Dundee Road, Suite 475
       Northbrook, IL  60062
       Phone: 847/291-0200
       Fax:    847/291-9230
       Email:  mvictor@okgc.com

17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST SAINT LOUIS DIVISION**

| | | |
|---|---|---|
| SHIRLENA BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-01366-NJR-RJD |
| | ) | |
| CITY OF CENTRALIA, ILLINOIS and | ) | |
| MICHAEL PEEBLES in his individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2018, I electronically filed this ***Defendants' Motion for Summary Judgment and Supporting Memorandum*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following registered CM/ECF participant(s):

Frank R. Ledbetter
stlatty@gmail.com

By:   *S/ Michael J. Victor*
        Michael J. Victor, #6297846
        O'Halloran Kosoff Geitner & Cook, LLC
        650 Dundee Road, Suite 475
        Northbrook, IL  60062
        Phone: 847/291-0200
        Fax:    847/291-9230
        Email:  mvictor@okgc.com

18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHIRLENA BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:17-CV-1366-NJR-RJD |
| | ) | |
| CITY OF CENTRALIA, ILLINOIS, and | ) | |
| MICHAEL PEEBLES, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge**

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Michael Peebles and the City of Centralia, Illinois (Doc. 43). For the reasons set forth below, the Court grants the motion.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not genuinely disputed. Michael Peebles began working as a Centralia police officer in August 2005 and became heavily involved in combatting a violent gang known as the Rude Boyz (Doc. 43, Ex. 1, pp. 16, 103). Officer Peebles testified that at one point, the Rude Boyz even discussed putting a hit out on him (*Id.* at p. 103).

On the morning of September 17, 2016, Officer Peebles spoke with Marion County Assistant State's Attorney Melissa Doran, who was involved in prosecuting a shooting that took place in Centralia (*Id.* at p. 57). According to Officer Peebles's testimony, Ms. Doran told Officer Peebles that two members of the Rude Boyz were threatening a 12-year old boy who witnessed the shooting (*Id.*). When Officer Peebles discovered that the individuals had

Short Appendix - Page 19

warrants out for their arrest, he requested backup from Sergeant Jamie James and went to the suspects' address to arrest them (*Id.* at p. 59).

While Officer Peebles was arresting the individuals, Shirlena Barnes drove by the scene with her daughter and niece and parked her vehicle across the street (Doc. 43, Ex. 5, pp. 38-44). Officer Peebles was familiar with Ms. Barnes; he had arrested several of Ms. Barnes's family members, including her brother, sister, niece, and nephews (Doc. 43, Ex. 1, pp. 19-24, 104). One of the individuals in Ms. Barnes's vehicle began yelling at Officer Peebles and calling him a "bald motherfucker" and "thirsty" (*Id.* at pp. 60-62). Officer Peebles believed the insults were directed at him because he was the only bald individual there (*Id.* at p. 63). Officer Peebles was focused on the arrest, however, and he could not identify exactly who was yelling at him (*Id.*).

That night, Ms. Barnes posted on Facebook, writing, "This thirsty bitch Mike out here on the same bullshit" (Doc. 43, Ex. 5, p. 175). She later commented on the post stating, "But this bitch don't believe that what goes around come around and when you got kids of your own" (*Id.*). A secretary at the Centralia police department saw Ms. Barnes's post and texted it to Officer Peebles (Doc. 43, Ex. 1, p. 95). Ms. Barnes testified the post was about Officer Peebles, although she never intended for him to see it (Doc. 43, Ex. 5, p. 134).

After reading Ms. Barnes's post, Officer Peebles called Assistant State's Attorney Doran and read her the post (Doc. 43, Ex. 1, pp. 56, 70). Officer Peebles testified Ms. Doran told him to file a report as a private citizen, but she apparently would not advise him on whether Ms. Barnes should be arrested or whether she would be prosecuted (*Id.* at pp. 70-73). Officer Peebles then called Sergeant James and told him about the Facebook post and the conversation with Ms. Doran (*Id.* at pp. 73-74). According to Sergeant James's testimony,

Short Appendix - Page 20

Officer Peebles said he talked with Ms. Doran, and Ms. Doran wanted Ms. Barnes charged with intimidation (Doc. 43, Ex. 2, pp. 33-34). Sergeant James dispatched Officer Andrew Harvard to take Officer Peebles's statement (Doc. 43, Ex. 1, p. 74). In his statement, Officer Peebles indicated that Ms. Barnes was at the scene of the arrest of known gang members and began yelling "bald head mother fucker" at him (Doc. 43, Ex. 7). Officer Peebles provided Officer Harvard a verbatim recitation of Ms. Barnes's Facebook post (*Id.*).

Around that same time, Sergeant James texted Ms. Doran and the following exchange occurred:

> Sergeant James: Hey Melissa, it's j james. I talked with [Officer Peebles] and just wanted to clarify before we acted. You want us to arrest her after 9 but no offense report just a vague pc sheet?

> Ms. Doran: Pretty much. That will give me a chance to talk to Matt about it before he decided right away what to do with the case[.] However, as I told [Officer Peebles], I can't tell you guys that you should or should not arrest anyone. That discretion lies solely with you. As the statute re: intimidation of a public official is written[,] this is a debatable case since it isn't clear to me whether the was a specific unique threat of harm (as the statute reads). As always however, what may not be able to be proven beyond a reasonable doubt still may have probable cause since it is a much lower burden.

(Doc. 43, Ex. 8).

Sergeant James decided to arrest Ms. Barnes for intimidation (Doc. 43, Ex. 2, pp. 60-61). He testified he believed Ms. Barnes's post was a credible threat against Officer Peebles's family because Ms. Barnes was associated with the Rude Boyz, her house was believed to be a safehouse for the Rude Boyz, and the gang was violent and had a history of harassing witnesses (*Id.* at pp. 61-68).

The Marion County State's Attorney prosecuted Ms. Barnes for intimidation and aggravated intimidation, (*Id.* at pp. 93-94), but entered an order of *Nolle Prosequi* on December

20, 2016, which ended the prosecution (Doc. 43, Ex. 11).[1]

Ms. Barnes's arrest and prosecution prompted her to bring this action against Officer Peebles and the City of Centralia. Her Complaint alleges Fourth Amendment claims for unlawful seizure (Count I) and malicious prosecution (Counts II) pursuant to 42 U.S.C. § 1983; a malicious prosecution claim under Illinois state law (Count IV); and a *Monell* claim against the City of Centralia (Count III) (Doc. 1). Defendants move the Court for summary judgment on all counts, arguing, in part, that Officer Peebles was not acting under color of law when he reported Ms. Barnes to the authorities; there was probable cause for Ms. Barnes's arrest; and there is no evidence the City of Centralia had any express policy or widespread practice that motivated Ms. Barnes's arrest.

## SUMMARY JUDGMENT STANDARD

Summary Judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v.*

---

[1] Ms. Barnes contests some of the facts set forth above, but they are either immaterial to the resolution of the case or not genuine. Most of the disputes Ms. Barnes raises are based wholly on speculation or conjecture, and she fails to set forth admissible evidence in support of her contentions. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) ("Not all disputes of fact preclude summary judgment. Such factual disputes must be both material *and* genuine. The underlying substantive law governs whether a factual dispute is material: irrelevant or unnecessary factual disputes do not preclude summary judgment. And a factual dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute. Mere metaphysical doubt as to the material facts is not enough.") (internal citations and quotations omitted).

*Catrett*, 477 U.S. 317, 322-24 (1986). The nonmoving party must offer more than "[c]onclusory

allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne*

*v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888

(1990)). In determining whether a genuine issue of fact exists, the Court must view the

evidence and draw all reasonable inferences in favor of the party opposing the motion.

*Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose

between competing inferences or balance the relative weight of conflicting evidence . . . ."

*Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting*

*Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

DISCUSSION

A defendant is liable under 42 U.S.C. § 1983 when he deprives the plaintiff of a

federally guaranteed right while acting "under color of state law." *Wilson v. Price*, 624 F.3d

389, 392 (7th Cir. 2010). "Not every action by a state official or employee is to be deemed as

occurring under color of state law; rather, action is taken under color of state law when it

involves a misuse of power, possessed by virtue of state law and made possible only because

the wrongdoer is clothed with the authority of state law." *Id.* (internal quotations and

alterations omitted).

Although Officer Peebles is a police officer, nothing in the record suggests he was

acting under color of law when he reported Ms. Barnes to the police. Officer Peebles testified

he did not arrest Ms. Barnes; he was not involved in the investigation, other than reporting

Ms. Barnes's post; he did not have foreknowledge of Ms. Barnes's arrest or the charges

brought against her; and he was not contacted by the State's Attorney's office during the

prosecution (Doc. 43, Ex. 1, pp. 87-88, 94, 108). Officer Peebles's actions were merely that of a complaining witness, which are purely private acts that do not involve exercising any authority granted by the State. *Johnson v. Miller*, 680 F.2d 39, 40 (7th Cir. 1982). "Policemen, like other citizens, have the right not only to call the police when they feel victimized, but to do so without rendering themselves liable under § 1983." *Mauntel v. Briscoe*, No. 93 C 6579, 1995 WL 319646, at *1 (N.D. Ill. May 6, 1995).

Ms. Barnes contends, however, that Officer Peebles wielded undue influence over the arrest and was improperly afforded unfettered credibility. Ms. Barnes points out that Officer Peebles called Ms. Doran at the Marion County State's Attorney office, which is beyond what a normal citizen could do. She also argues Officer Peebles falsely indicated to Sergeant James that Ms. Doran wanted Ms. Barnes arrested. Even if taken as true, however, none of this indicates Officer Peebles invoked his authority as a police officer or was acting in furtherance of his police duties. A private individual is not liable under Section 1983 merely because he provides information to a police officer, who then acts on his own initiative to arrest someone. *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 327 (7th Cir. 1978). This is true even if the information provided to the police is false. *Shelton v. Schneider*, No. 05-C-5952006 WL 59364, at *4 (N.D. Ill. Jan. 4, 2006). Here, Sergeant James testified he had sole discretion to determine whether to arrest Ms. Barnes and he believed probable cause existed for Ms. Barnes's arrest (Doc. 43, Ex. 2, pp. 60-62, 69).

To hold Officer Peebles liable under Section 1983 as a private actor, Ms. Barnes must demonstrate that Peebles conspired with state actors to violate her civil rights. *See Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are action, are acting [] 'under color' of law for purposes of § 1983

actions."). But Ms. Barnes does not allege a conspiracy here, and the facts are insufficient to establish one. There is ultimately no evidence Officer Peebles was acting under color of state law for purposes of Section 1983.

Even if Officer Peebles was acting under color of state law, the existence of probable cause acts as an absolute defense to Ms. Barnes's Section 1983 and Illinois state law claims. *Schertz v. Waupaca Cty.*, 875 F.2d 578, 582 (7th Cir. 1989); *Bontkowski v. United States*, 28 F.3d 36, 37 (7th Cir. 1994). "A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to [] commit a crime." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007). The existence of probable cause is usually one for a jury, but if the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993). "[I]f the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Id.* "Accordingly, a conclusion that probable cause existed as a matter of law is appropriate only [if] no reasonable jury could find that [Sergeant James] did not have probable cause to arrest [Ms. Barnes]." *Id.*

Sergeant James arrested Ms. Barnes for intimidation, which a person commits when she communicates, either directly or indirectly, a threat to inflict physical harm on a victim, with the intent to cause the victim to omit the performance of any act. 720 ILCS § 5/12-6. Before executing the arrest, Sergeant James obtained a statement from Officer Peebles, which indicated Ms. Barnes posted a threatening message about Officer Peebles on Facebook (Doc. 43, Ex. 2, p. 72). Ms. Barnes does not contest the credibility of Officer Peebles's

Short Appendix - Page 25

statement, and Sergeant Barnes testified he had no reason to doubt its veracity (Doc. 43, Ex. 2, p. 72) "When an officer has received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, he has probable cause." *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986) (internal quotations omitted).

Additionally, Sergeant James had knowledge of surrounding circumstances that could reasonably give rise to probable cause. "Probable cause is assessed objectively; a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes*, 511 F.3d at 679. The Court should make the assessment by viewing the facts as they reasonably appeared to the arresting officer, "seeing what he saw, hearing what he heard, and so forth." *Id.* According to his testimony, Sergeant James knew that: the Rude Boyz are a violent gang that intimidates witnesses (Doc. 43, Ex. 2, pp. 61-62, 68, 70); the Rude Boyz made threats against Officer Peebles in the past (Doc. 43, Ex. 2, pp. 71, 77); Ms. Barnes was at the scene of the arrest of two Rude Boyz and either yelled, or was with someone who yelled, obscenities at Officer Peebles (Doc. 43, Ex. 2, pp. 65, 71, 72, 83); Ms. Barnes and her family are associated with the Rude Boyz (Doc. 43, Ex. 2, pp. 55, 70, 75); Officer Peebles had arrested several members of Ms. Barnes's family members (Doc. 43, Ex. 2, pp. 82-83); and Ms. Barnes posted a message on Facebook that appeared to be about Officer Peebles and referenced karma (Doc. 43, Ex. 2, pp. 62-63, 65).

Ms. Barnes argues that most of this information is hearsay, but "probable cause may be founded upon hearsay and upon information received from informants . . . ." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Ms. Barnes also argues Sergeant James's testimony is, itself,

inadmissible hearsay. But Sergeant James's statements are not offered for their truth, but for their effect on the probable cause determination. "[I]t's what the police know, not whether they know the truth, that matters." *Gramenos*, 797 F.2d at 439; *see also Kosyla v. Grizzoffi*, 49 F. App'x 641, 644 (7th Cir. 2002) (where statements were not hearsay because they were offered for their effect on an officer's probable cause determination). Thus, it is appropriate to find probable cause existed as a matter of law, as no reasonable jury could find otherwise.

Because probable cause existed for Ms. Barnes's arrest, and Officer Peebles was not acting under color of state law, Defendants are entitled to summary judgment as to Counts I, II, and IV of Ms. Barnes's Complaint.

Ms. Barnes's only remaining Count sets forth a *Monell* claim against the City of Centralia (Count III). According to *Monell v. Dep't of Social Services of New York*, a municipality cannot be held liable under Section 1983 based on a theory of *respondeat superior.* 436 U.S. 658, 694 (1978). Rather, a plaintiff must identify "a custom, policy or practice that effectively caused or condoned the alleged constitutional violations." *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). Ms. Barnes has not done so here. Instead, she recounts news reports from 1979, 1993, 2014, and 2016 that purport to establish Centralia has a practice of not disciplining its police officers for misconduct. Unfortunately, however, Ms. Barnes does not even provide a citation to verify the statements, and they do not comport, at all, with the Federal Rules of Evidence. When ruling on a motion for summary judgment, the Court can only consider admissible evidence. FED. R. CIV. P. 56(c)(2). Ms. Barnes had not produced any admissible evidence in support of her *Monell* claim, so it must fail.

In the alternative, Ms. Barnes's *Monell* claim also fails because probable cause existed for her arrest, so no constitutional violation occurred for which the City of Centralia is liable.

*See Matthews*, 675 F.3d at 709. The City of Centralia is entitled to summary judgment as to Count IV of Ms. Barnes's Complaint.

C<small>ONCLUSION</small>

For the reasons set forth above, the Motion for Summary Judgment filed by Michael Peebles and the City of Centralia (Doc. 43) is **GRANTED**. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   January 29, 2019**

**NANCY J. ROSENSTENGEL**
**United States District Judge**